Nicholson, C. J.,
delivered the opinion of the Court.
This suit was commenced in the Circuit Court of Davidson county in December, 1865, in which Me--Whirter claimed about $11,000 of Douglas, on the following contract:
“Nashville, November 27, 1852: Mr. And. J. Mc--Whirter, I will pay you the estimated discrepancy between' what' the businéss of H. & B. Douglas^ Co. promises for the next three years, as compared with. *71 an offer made to' you by another party, for same time, which we now presume to be from one dollar to three thousand dollars, so soon as a correct amount can be arrived at. Hugh Douglas.”
McWhirter had been a partner in the house of H.. & B. Douglas & Co. from December 1, 1849, and the term of the partnership would terminate on the 1st of December, 1852. He had received proposals for a partnership in the house of Cossett, Howard & Hill, at Memphis, which he had concluded to accept. Douglas desired to retain him in the house of H. & B. Douglas & Co., and to induce him to remain, made to him the offer contained in the foregoing paper. McWhirter abandoned the project of going to Memphis, and two days after the date of the said paper, to-wit., on the 29th of November, 1852, entered into new articles of partnership with the house of H. & B. Douglas & Co. He continued as partner in that house until the expiration of the term of the partnership, to-wit., on the 1st of December, 1855. At that time he claimed that under the contract aforesaid, Douglas was indebted to him in the sum of about $11,000, and upon Douglas’s refusal to pay, he commenced this suit.
According to McWhirter’s construction of the contract, the amount to which he was entitled was to be ascertained by the actual results of the business of the two firms, that of H. & B. Douglas & Co., at Nashville, and Cossett, Howard & Hill, at Memphis,, and upon this construction he bases his claim in his-declaration.
*72 Proof was taken to suppprt bis claim upon this constuction of the contract, and upon the trial the Circuit Judge adopted McWhirter’s construction, in his charge to the jury, and under this charge they found for the plaintiff, and assessed his damages to about $4,200. Douglas appealed from the judgment rendered on this verdict, and in 1860 the judgment was reversed in this court, and a new trial granted.
This court (Judge Wright giving the opinion) held that Douglas & McWhirter did not intend, by the contract, to wait or look to the actual results of the business of these two firms, nor are we permitted to do so. They had already, at the time of the writing, presumed, within certain limits, the difference, or, as the writing has it, discrepancy, between the value of the two propositions; and the certainty of the same was to be worked out as soon as it could be correctly done. It was to this estimate the parties referred as the basis of the contract, and by it they must be held. We are to place ourselves in their shoes at the time of the contract, and with the lights then before them, as to the relative value of the two •offers, irrespective of what was eventually the result of the business of the two firms, determine, if it be practicable, what is due from Douglas to McWhirter upon the contract.
Having thus declared the construction placed upon the contract by the Circuit Judge to be erroneous, the judgment was reversed, and the cause remanded for another trial.
The cause was again tried by a jury at the Jan *73 uary Term, 1868, of the Circuit Court for Davidson, when a. verdict was rendered in favor of MeWhir-ter for $2,610, and Douglas, again appealed to this Court.
The main portion of the charge of the court was made upon the': theory that before Douglas signed the contract sued on, he had been made acquainted with the substance of the correspondence between McWhirter and Cossett, in which Cossett had proposed to McWhirter specific terms for a partnership in the Memphis house of Cossett, Howard & Hill, and that Douglas’s contract was made with reference to those terms. In the opinion of Judge Wright, given in this case, in 1 Col., 597, he says: “It is fair to suppose, from the tenor of the writing (the contract of November 27, 1852), that the terms of the offer of Cossett had been stated to Douglas, though he may not have been shown the correspondence between Cos-sett and MeWhirter.” In the record before Judge Wright it was left to inference and conjecture whether the terms of Cossett’s offer of partnership were communicated to Hugh Douglas by McWhirter, or not. But on the trial which took place after the cause was remanded, Byrd Douglas was examined as a witness, and he states that MeWhirter said he was offered a guarantee of $7,000 per annum for the same time contemplated by the articles of the second co-partnership term of H. & B. Douglas & Co. Witness asked MeWhirter to show the proposition. McWhirter said no, that he could not do so, a,s secrecy had been enjoined; but that he would, at some sub *74 sequent time, get permission, and then be would show it.
Byrd Douglas testifies that he drew the contract of November 27, 1872, which was signed by Hugh Doug-’ las, and that the promise contained therein to “pay the estimated discrepancy between what- the business of H. & B. Douglas & Co. promises for the next three years, as compared with an offer made to you by another party,” etc., had reference to the statement of McWhirter, that he had an offer of $7,000 per annum. It is manifest that, in view of the evidence of Byrd. Douglas, the case was essentially different on the last trial from that on the first trial. On the first trial Byrd Douglas was not a witness, and on that trial the question was, What was the difference to McWhirter between the partnership offered to him by Douglas and that offered to him by Cos-sett? But as presented on the last trial, when Byrd Douglas was examined, the question was, whether Mc-Whirter represented to Douglas that he had a guaranty offer of $7,000 a year for three years, and whether Douglas contracted 'with him believing that he had such offer, when, in fact, he only had an offer of a partnership from which Cossett estimated that he would derive $7,000 or $8,000 a year. It is clear that if Byrd Douglas’s testimony was true, McWhirter misrepresented the offer made to him by Cossett, and therefore Douglas was not bound, by his promise so procured, for more than the difference between what the business of H. & B. Douglas promised, and-the $7,000 a which year had been offered by Cossett.
*75 As already stated, the charge of the Circuit Judge was based upon the assumption that the amount due to McWhirter by Douglas was to be ascertained by comparing the estimated amounts which the Memphis and Nashville firms promised to yield to McWhirter. This was the view taken of the case when it was presented on the appeal to the Supreme Court, and it was in view of this aspect of the case' that Judge-Wright discussed the question as to the mode of ascertaining and fixing the damages. The Circuit Judge-charged the jury in accordance with the opinion of Judge Wright, not only as to the construction of the contract, but also as to the ascertainment of the amount due from Douglas to McWhirter. Adopting Judge Wright’s construction of 'the contract to be conclusive (as it was), the Circuit Judge told the jury:
“And judging of the value of the Memphis house,, in the light of the statements revealed by the correspondence, as they are presumed to have judged,, and .looking to it only, and judging of the value of the offer of H. & B. Douglas Co. in the light of all the facts, and history of their business, with which they are presumed to have been familiar, you will ascertain what the difference between these values was in favor of the plaintiff, and give him a verdict for the amount; which sum, however, must not exceed $3,000 in amount, nor be less than $1,” etc.
Under this charge the jury had nothing before them by which to ascertain the amount due, except the contract itself, which left the amount uncertain, varying from $1 to $3,000, and the two offers of *76 partnership by H. &. B. Douglas at Nashville, and Cossett, Howard & Hill at Memphis. The correspondence between McWhirter and Cossett, which was before the jury, contained an estimate by Cossett, that the offer of his house would be worth $7,000 or $8,000 a year to McWhirter, and to this the jury was allowed to look. But no estimate by Douglas or other witnesses, as to the amount which the' offer of H. & B. Douglas & Co. would yield to McWhirter, was before the jury. There was, .therefore, no evidence on which the jury could compare the estimated values of the two offers and ascertain the amount of the difference between them.
Upon well settled principles, it devolved on the plaintiff to adduce evidence to support his claim. In his declaration he claimed that this difference was $4,400 in the three years.
The contract admitted that there was some difference, from $1 to $3,000. We think it clear that to entitle the plaintiff to fecover more than $1 it , devolved upon him to show, by proof, that the difference was greater, and to show what was the amount of that greater difference. The admission in the contract as to any liability was absolute only as to $1; as to any further liability, that was uncertain and contingent, and to be made out by the plaintiff.
But it is obvious that the jury, having no evidence on which to base a verdict for more than '$1, followed a suggestion made by Judge Wright in his •opinion, as follows:
“Now, according to the view we have already *77 taken of tbe case, it is apparent, upon the face of the contract, that the parties themselves considered that some amount, ranging from $1 to $3,000, was-due from Douglas to McWhirter, so that, without more, the plaintiff could never be dismissed out of court; and we apprehend, unless it were shown by proof aliunde the contract, that his rights were merely nominal, he must recover substantial damages, namely, some amount intermediate the one dollar and three thousand dollars, designated by the parties. Perhaps,, in such a case, there being no legitimate proof at all but the writing, it would be fit and just to assume one thousand five hundred dollars, with proper interest, as the true sum; and this upon the principle that the parties had a right to set a value upon the contract in dispute; and having done so, this one rule of damages will not be disregarded by the Court.”
It is manifest that the jury, having no evidence on which to base a verdict, adopted the suggestion of Judge Wright, and gave the plaintiff one thousand five hundred dollars, with interest, making two thousand six hundred and ten dollars.
It is apparent Judge Wright made the suggestion as to the mode of solving a difficulty inherent in the contract, with hesitancy, and with doubt as to its correctness; he says, “Perhaps, in such a case, there being no legitimate proof at all but the writing, it would be fit and just to assume $1,500,” etc. And immediately after making the suggestion, he adds: “But as a mode of arriving at the exaet damages, or sum due, the contract contemplates that other data or proof *78 besides that furnished by the instrument itself, was to be resorted to; but what that was to be is not shown in the writing, or elsewhere in the record.”
How can a verdict stand which rests alone upon a contract, which contains . no legitimate proof at all by which to ascertain the amount of damages for its violation, and when that contract contemplates that other data or proof was to be resorted to; but what that was to be is not shown in the writing, or elsewhere. The true rule in such a ease had already been laid down by Judge Wright, where he said: “The difficulty in this construction of the contract, and winch, we think, must of necessity be the true one, is to state grounds upon which damages can be assumed upon any sound principle of law; for if the term of the contract be such as to make it impracticable, consistent with legal rules, to arrive at any measure of damages, this alone is fatal to the action, or at least to the recovery of more than nominal damages."
It would seem to follow that in this case, where there is no legitimate evidence at all, except the contract, and where the contract contemplates other data or proof for ascertaining the damages, which do not appear in the contract or aliunde, that the terms of the .contract are such as to make it impracticable, consistent with legal rules, to arrive at any measure of damages, and that this is fatal to the action, unless it be allowable to override the rule which requires a plaintiff to make out his allegations by proof, and that other rule which forbids a jury to render a verdict except upon legal evidence.
*79 But Judge Wright’s suggestion as to a compromise verdict seems to rest upon the case of McMill v. Reed, 9 Bing., 63, which he cited for the suggestion. In that, case the plaintiff had given up the command of an East India voyage, in consideration that the defendant would give him a partnership. The question was, whether the plaintiff could show the value of the command given up, not as special damages, but as an ingredient of estimating the value which each of the parties set upon the contract in dispute. The proof was allowed for the purpose indicated, because the parties themselves had set a value on the contract in dispute, and had considered the engagement as equivalent to the command of an East India voyage, shown to be of the probable value to the Captain of not less than five hundred pounds, and that was taken as evidence of the value of the plaintiff’s interest in the property of the partnership, so that all that had to be done there was to reacia the value of the command of a single voyage, out of successive schemes and investments.
It is obvious that the difficulty in that case was to take it out of the rule which excludes evidence of remote or speculation profits in estimating damages for the breach of a contract. It was taken out of the rule solely on the ground that it was a single voyage, and not a succession of schemes and investments; but we are unable to see how that case is any authority for the suggestion upon which the verdict in the case before us was based. In that case plaintiff sued for breach of a contract of partnership, *80 and; to ascertain the amount of his damages, was allowed to prove that at the instance of the defendant he gave up the command of an East India voyage, estimated by proof to be worth five hundred pounds. It was assumed, therefore, that the parties had agreed on five hundred pounds as the value of the partnership to plaintiff, and because it was their agreement, the proof was admitted as legal.
In the present case plaintiff sues for the breach of a contract by which defendant agreed to pay plaintiff from $1 to $3,000, the estimated difference between two offers of partnership, when the exact amount could be ascertained. All that is agreed on is, that there is some difference between the two offers, one party probably estimated it at $í, and the other at $3,000. There was no agreement that $1,500 was the true amount, and no proof that this was the true amount of the difference in the two offers. On the contrary, they evidently differed as to the true amount, and looked to some data or proof outside of the contract, by which the true amount was to be ascertained. As we have said, it devolved upon the plaintiff to adduce evidence to sustain his allegation that, the true amount was more than $1, and having failed to do so, the verdict of the jury was without proof to support it.
In the next place, is the contract, as construed by the plaintiff, and sued on in his declaration, sustained-by the written contract given in evidence? As construed by Judge Wright, and no doubt correctly, the amount which Honsdas agreed to pay McWhorter was *81 not tbe difference in tbe actual profits of tbe two firms, to be ascertained by the results at the end of three years, but the estimated difference between what, the business of H. & B. Douglas & Co. promised for three years, and the offer of the Memphis house for the same time, as was assumed by Judge Wright in his opinion, and by the Circuit Judge in his charge,, or the difference between what the business of H. & B. Douglas & Co. promised for three years, and the-offer of $7,000 a year, as proved on the last trial by Byrd Douglas.
Turning to plaintiff’s declaration, we find that ho states the eoutract as follows: That Cossett made him an offer of a partnership at Memphis, stating in de-tial the terms which would' yield to plaintiff an annual profit of $7,000 or $8,000; that while he was entertaining the proposition, and about to accept it, it became known to defendant, who agreed if plaintiff would reject Cossett’s offer, and accept a partnership, in the house of H. & B. Douglas & Co., on terms then specified and agreed on, defendant “would pay to the plaintiff the estimated discrepancy between what the business of H. & B. Douglas & Co. promised for the next three years, as compared with the proposition contained in the letter from F. W. Cossett to him for the same time, when the amount could be arrived at, or was shown at the expiration of the term,” which proposition plaintiff thereupon agreed to accept; and therefore the said Hugh Douglas, by two written promises, dated November 27, 1852, here to. the court shown, undertook- and agreed to pay, etc., *82 •quoting the language of tbe D. & Co. He then alleges that he accepted Douglas’s offer, and continued for three years a partner of H. & B. Douglas & Co., and that the discrepancy between what he realized .and that proposed in the letter of Gossett, amounted in the first- year to $3,000, and in the second year to $3,174, and in the third to $5,300, etc., and for these amounts he sued. We find no proof in the record that the letter of Gossett, which contained the terms •of the offer of a partnership at Memphis, was ever shown by McWhirter to Douglas before the contract of November 27, 1852, was made, as alleged in the declaration, or that Douglas was apprized of the terms •Of the offer; on the contrary, it is proven by Byrd Douglas, on the last trial, that McWhirter refused to show the proposition, saying that he was enjoined to secrecy, but stating that the offer was $7,000 a year for three years, and that it was in' reference to this •offer that Hugh Douglas made the contract. This evidence is uncontradicted, and proves a different contract from that set out and relied on by plaintiff in •his declaration.
But the Circuit Judge assumes as a fact, that the terms of the offer of the Memphis house had been communicated to Hugh Douglas, and that that was the offer referred to in the contract, and on which it was based. This was a fact for the jury, and a fact which was expressly contradicted by the evidence of Byrd Douglas, and not proved by any testimony.
But after basing the main portion of his charge on this assumption of the fact, the Circuit Judge pro- *83 needed to tell the jury that “if you shall find that the offer referred to was not the offer of the Memphis house, or that the terms of their offer had not been substantially stated to Hugh Douglas, and that he was induced by a false and deceitful statement of the same, made by the plaintiff, whether personally or not, then the plaintiff could not recover.”
This portion of the charge was made in view of the evidence of Byrd Douglas, and so far as the question of a fraudulent representation by McWhirter, or a fraudulent suppression of the terms of the offer made by Cossett was concerned, it was objectionable. The jury evidently believed that McWhirter regarded the offer of - Cossett as equivalent to $7,000 a year, and therefore that it was not fraudulently represented to be an offer of $7,000 a year.
But as the Circuit Judge undertook to charge upon the new aspect given to the ease by the testimony of Byrd Douglas, it was his duty to have stated to the jury what would be the legal effect upon the rights and obligations of the parties, if they believed that Douglas entered into the contract under the representation that the offer received by McWhirter was an annual amount of $7,000, instead of the estimated amount of a partnership proposed. On this view of the ease no instructions were given.
On this point we think the court ought to have instructed the jury, that if Douglas entered into the contract on the belief, produced by the representation of McWhirter, that the offer made to him by Cossett was an annual guaranty sum of $7,000, then he was *84 estopped from relying on any other offer in ascertaining the amount claimed, and that Douglas had' a right to insist on that amount as the offer referred to in the contract. In that view of the proof, it would have devolved on plaintiff to establish the amount due him by showing the difference between the annual sum promised by the business of H. & B. Douglas & Co. and the offer of $7,000, not to exceed $3,000 for the three years. As held by this court when the contract was construed in 1860, it was the difference between the estimated amount promised by the business of H. & B. Douglas & Co. for three years, and the offer which, in this view, was $7,000 a year, that McWhirter was entitled to recover, not exceeding $3,000.
The evidence of Byrd Douglas furnishes a fixed data with which the estimated profits of H. & B. Douglas & Co. was to be compared. Inasmuch as the contending parties fixed no- definite amount as the difference between the two offers, but contemplates its ascertainment by estimates, we see no reason why this estimate could not be made by the testimony of witnesses, with the terms of the partnership before them, based upon their knowledge of the past business of the house, and the character of the members of the-firm for skill, energy, and success in .business. This is the estimate on which the parties based their contract, and its ascertainment in the manner indicated must have been contemplated by them.
If, however, the jury should believe that the offer referred to in the contract was an offer of a partner *85 ship and not an offer of $7,000 a year, then the difference between the two offers would be ascertained in the same manner as to the Memphis offer, as already indicated in regard to the Nashville offer. The peculiar terms, of the contract of November 27, 1852, render it impracticable to arrive at the difference between the two offers, and consequently the amount due to the plaintiff, in any other way than by ascertaining and comparing the estimates of the business of the one or of both the firms as indicated, and a resort to this mode seems to be fairly implied by the terms of the contract.
Without considering other questions discussed in the arguments for the several errors indicated, the judgment will be reversed.